UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | |
| ) | Bankruptcy Case |
| PETER MICHAEL EVANS and ) | No. 17-62302-tmr13 |
| ELAINE CHERIE EVANS, ) | |
| ) | MEMORANDUM OPINION |
| Debtors. ) | |

This matter comes before the Court on the Trustee's Objection to Confirmation of Debtors' Modified Chapter 13 Plan dated October 2, 2017 (Doc. #19). The parties have agreed that resolution of Trustee's objection turns on a legal issue and that the record before me is sufficient. I have reviewed the parties' memoranda and reply briefs, considered counsel's arguments at the hearing, and conducted my own research into the issues.

The parties' arguments focus primarily on the validity and applicability of Local Bankruptcy Rule (LBR) 3015-1(b)(7) and, by extension, whether 28 U.S.C. § 586(e) permits Trustee to take a fee on claims paid through escrow. In fact, Debtors argue that the Local Rule is invalid. While those issues are the core of the dispute, the analysis for resolving objections to confirmation must begin with the Bankruptcy Code.[1]

In their Plan, Debtors propose to pay secured creditors through escrow upon the sale or refinance of the real property. As such, we look first to the section governing the manner of payments to creditors.

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code, the Bankruptcy Code.

MEMORANDUM OPINION-1

Section 1326(c) states "except as otherwise provided in the plan or in the order confirming plan, the trustee shall make payments to creditors under the plan." Section 1326(c), thus, contemplates permitting debtors to make payments to creditors directly, but it presumes that payments are disbursed by the trustee. While the Code does not provide guidance for determining when direct payments are appropriate, the Ninth Circuit Bankruptcy Appellate Panel (BAP) and the Ninth Circuit addressed the issue in *Cohen v. Lopez (In re Lopez)*, 372 B.R. 40 (9th Cir. BAP 2007), *aff'd* 550 F.3d 1202 (9th Cir. 2008).[2] In *Lopez* the panel determined that a debtor's ability to directly pay creditors turned on whether the creditor's claim was "impaired." 372 B.R. at 47. If impaired, the claim must be paid by the trustee unless the court, in its discretion, determines that direct payment is appropriate. *Id.* at 46-47.

During oral argument, at my request, counsel spent considerable time discussing the term "impairment" and how to define it. Debtors ask that I restrict my review of this question to Chapter 13 of the Code, which does not define the term, and caselaw pertaining only to Chapter 13. Trustee asks that, in addition to Chapter 13-specific cases, I also consider the matter in light of § 1124(1), defining "impaired" in the context of Chapter 11 plans, as well as cases analyzing the term for plan confirmation purposes in Chapters 11 and 12. I think the latter approach harmonizes with caselaw on the subject and is consistent with the notion that Title 11 is a cohesive body of law. Notwithstanding the characteristics unique to each chapter, courts "consider[ing] whether case law interpreting a particular chapter of the Bankruptcy Code is applicable to interpretations of substantially similar sections in other chapters. . . almost universally [find] that such interpretations are applicable." *Lopez*, 372 B.R. at 45 n.13 (internal citations omitted). Within the Code, "similar words and phrases presumptively will receive the same construction, even if found in different parts of the Code." *In re Trejos*, 352 B.R. 249, 257 (Bankr. D. Nev. 2006) (citing *Rousey v. Jacoway*, 544 U.S. 320, 326-27 (2005)).

// // //

---

[2] The Ninth Circuit did not draft a separate opinion, but entered an order for publication affirming the BAP, noting "we adopt as our own the well-reasoned published opinion of the [BAP]." *Lopez*, 550 F.3d at 1202. Therefore, the reasoning in the BAP opinion should be treated as Ninth Circuit controlling precedent.

MEMORANDUM OPINION-2

Taking into consideration the larger body of law interpreting "impairment" in the plan confirmation context, we'll start with *Lopez*. *Lopez* does not conclusively define "impairment," but states that it "occurs when the plan purports to pay an obligation as originally scheduled notwithstanding a creditor's nonbankruptcy rights other than the right to accelerate the debtor's maturity date." 372 B.R. at 47. Although *Lopez* is a Chapter 13 case, throughout its 16 pages, it extensively analyzes and applies in a limited fashion the BAP and Ninth Circuit rulings in *In re Fulkrod*. *Fulkrod*, a Chapter 12 case, considered whether § 1226(c)[3] requires impaired claims to be paid through the trustee.[4] *Fulkrod v. Barmettler (In re Fulkrod)*, 126 B.R. 584, 588 (9th Cir. BAP 1991) (*Fulkrod I*). The BAP stated:

> We believe that Congress intended to use the term "under the plan" to mean those payments which result from the operation of Chapter 12 bankruptcy law. Those payments should be made by the trustee, and the trustee's fee should be assessed against the funds received from the debtor for that purpose. Typically, those payments will involve impaired claims which the debtor could not insist upon but for the protections of Chapter 12.

*Fulkrod I*, 126 B.R. at 588. On appeal, the Ninth Circuit did not define impairment, but stated in its holding that "Chapter 12 of the bankruptcy code does not authorize a debtor to make payments directly to creditors with claims modified by a plan of reorganization in order to avoid paying the bankruptcy trustee the statutory fee under 28 U.S.C. § 586." *Fulkrod v. Savage (In re Fulkrod),* 973 F.2d 801, 803 (9th Cir. 1992) *(Fulkrod II)*.

Turning to Chapter 11, § 1124(1) specifies that a class of claims is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights" of the creditor. In this context, "Congress defined impairment in the broadest possible terms." *In re L & J Anaheim Associates*, 995 F.2d 940, 942 (9th Cir. 1993) (internal citations omitted). "[A]ny alteration of the rights constitutes impairment even if the value of the rights is enhanced." *Id*. Clarifying that this broad definition of impaired is not specific to Chapter 11, the

---

[3] Section 1226(c), identical to § 1326(c), reads "[e]xcept as otherwise provided in the plan or in the order confirming plan, the trustee shall make payments to creditors under the plan."

[4] Although *Fulkrod* also addresses the application of 28 U.S.C. § 586(e) to impaired claims paid directly by the debtor, I am limiting my review of the case to its analysis of § 1226(c) and the definition of "impaired."

MEMORANDUM OPINION-3

BAP analyzed the treatment of a creditor's claim in a proposed Chapter 13 plan within the context of this definition. *In re Geisbrecht*, 429 B.R. 682, 685 n.2 (9th Cir. BAP 2010) (citing *L & J Anaheim Associates*, the BAP stated: "[W]e use the term 'unimpaired' in this case because the claim being paid directly to the creditor was not in default at the petition date and there was no alteration or modification of treatment of the claim by the debtors' chapter 13 plan. Accordingly, there was no impairment, even under the Ninth Circuit's very broad definition of impairment.").

The consistency between the definitions – or, rather, descriptions – of "impairment" found in *Lopez* ("when the plan purports to pay an obligation as originally scheduled notwithstanding a creditor's nonbankruptcy rights"), *Fulkrod I* (payments on claims "which the debtor could not insist upon but for the protections of chapter 12"), *L & J Anaheim Associates* ("any alteration of the rights" of a creditor), and § 1124(1) (an alteration of the legal, equitable, or contractual rights of the creditor) is clear. Read together, they define impairment as any proposed alteration of the rights of a creditor, which the debtor could not insist on but for the protections of the Bankruptcy Code. Moreover, where the *Fulkrod I* definition is based on an analysis of § 1226(c), the Chapter 12 equivalent to § 1326(c), I see no reason to impose a different or more restrictive definition in the Chapter 13 context. Therefore, consistent with the definition outlined above, I hold that the "under the plan" language of § 1326(c) includes claims that are impaired by operation of bankruptcy law.

The question in this case then becomes: are the secured claims at issue impaired? As to the two judicial lien creditors, Debtors propose to pay the claims in full, per the terms of the judgments, upon the sale or refinance of the real property. They give themselves until July of 2020 to do so, proposing no payments to the two creditors in the interim. Debtors argue that the claims are not impaired, because they will receive full payment including the judgment rate of interest at closing. Nevertheless, the bankruptcy filing and proposed plan treatment curtails the creditors' rights to execute and foreclose on the liens for a three-year period. This is an impairment, plain and simple.

Regarding Linn County's property tax arrearage claim, the analysis is very similar. The County's claim includes past due taxes for 2015 and 2016. (POC #3-1; filed 8/4/17). In paragraph 2(b)(1) of the Plan,

MEMORANDUM OPINION-4

Debtors propose to pay the total claim in full with all funds available from Debtors' monthly plan payments after attorney fees are paid and after accounting for the $125 monthly adequate protection payment to Wells Fargo. The balance remaining at the time the home is sold or refinanced in 2020 will be paid through escrow. But again, notwithstanding the proposal to pay the County in full, the proposed treatment impedes, among other things, the County's right to pursue foreclosure for the delinquent taxes pursuant to ORS § 312.010. Thus, the claim is impaired.

In light of counsel's arguments at the hearing about the applicability of *In re Bettger*, 105 B.R. 607 (Bankr. D. Or. 1989) and *In re Stinebaugh*, 2013 WL 5883765 (Bankr. D. Id. 2013), I want to briefly address how I think they impact the "impairment" analysis in this case. As discussed at the hearing, there are key factual distinctions between those cases and this one, the most notable being that the secured creditors' claims in those cases were paid in full through escrow either before the debtor's plan was confirmed (in the case of *Stinebaugh*) or contemporaneously with confirmation (*Bettger*). *See Stinebaugh*, 2013 WL 5883765, at *1; *Bettger*, 105 B.R. at 610 (the court extended a deadline to October 30, 1989, before which the debtors intended to close on a pending sale). The *Stinebaugh* opinion did not include any discussion regarding impairment of the creditors' claims; it was not at issue. 2013 WL 5883765, at *2 (the analysis was limited to the trustee's right to collect a fee under 28 U.S.C. § 586(e) from sale proceeds already paid directly to the creditor prior to confirmation). The *Bettger* court's discussion regarding modification was relatively short:

> Here the debtors are not seeking to modify any of [the contract] terms. They merely seek a short time in which to sell the collateral and distribute the proceeds to the secured creditors, in a lump sum.

105 B.R. at 609. Notwithstanding the fact that the sale had not closed at the time the court issued its opinion and that the record does not specify whether it closed before or shortly after entry of the confirmation order on November 17, 1989, it is clear that the court based its opinion on the assumption that closure and payment of the claims was imminent. *See* Order Confirming Plan, *In re Bettger*, No. 689-60163-R13 (Bankr. D. Or. Nov. 17, 1989), Doc. #22. The court did not use the term "contemporaneous" to describe the timing of these two events in relation to one another, but I think it fair to consider them as such and to conclude that the *Bettger* court did as well.

MEMORANDUM OPINION-5

Although the question of impairment was not important in either case, the fact that the sales in both cases occurred prior to or contemporaneously with confirmation adds clarity to our understanding of the term and the circumstances under which debtors are allowed to pay secured claims through escrow. Borrowing again from Chapter 11 practice, even after the statute's amendment, creditors that receive cash equal to their allowed claims, together with post-petition interest, on the effective date of the plan are not "impaired" under § 1124. *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 205-207 (3d Cir. 2003) (citing *L & J Anaheim Associates*, 995 F.2d at 942-43 for treating "impairment" as a term of art). The *PPI Enterprises* court outlined this holding as part of its examination of whether a particular creditor was entitled to vote on the debtor's Chapter 11 plan. *Id.* Voting rights are not at issue in this case, but the holding in *PPI Enterprises*, as an elaboration on the meaning of "impaired," highlights a key component of § 1326(c): a creditor who is paid in full with interest before confirmation, by definition, cannot be impacted by the plan. Similarly, satisfaction of a creditor's claim consistent with nonbankruptcy law as of the effective date of the plan (i.e., contemporaneously with confirmation) necessarily means that the claim is unaltered by the plan and, thus, there is no "payment[] to creditor[] under the plan" within the meaning of § 1326(c). Applying this reasoning to *Bettger* and *Stinebaugh*, I conclude that the secured claims in those cases fell outside the ambit of § 1326(c). By contrast, in this case, Debtor's proposed Plan and confirmation thereof is the mechanism for delaying payment to the secured claims for three years. The Plan thereby invokes § 1326(c) and the applicable caselaw regarding impaired claims.

That said, a determination that the claims are impaired does not end the inquiry under § 1326(c). "[B]ankruptcy courts have been afforded the discretion to make the determination of when direct payments may or may not be appropriate based upon the confirmation requirements of § 1325, policy reasons, and the factors set forth by case law, local rules or guidelines." *Geisbrecht*, 429 B.R. at 690 (citing *Lopez*, 372 B.R. at 46-47). Both parties in this case recognize the inherent limitations on Trustee's ability to act as an escrow agent. As Trustee acknowledges, "chapter 13 trustees - are not equipped to guarantee title to real properties, or to coordinate lien payoffs and releases, or to handle other matters required in real estate transactions." TRUSTEE'S MEMORANDUM at 5 (Doc. #28; filed 11/28/17).

MEMORANDUM OPINION-6

Presumably with these limitations in mind, the Bankruptcy Court for the District of Oregon implemented LBR 3015-1(b)(7), which provides as follows:

> **Payment of Certain Claims Secured by Real Property**. If a debtor and the trustee agree, the debtor may pay mortgage arrearages and other claims secured by real property upon a sale or refinance of the property directly to the creditor. The trustee may, upon demand, be paid the trustee's authorized fee based upon those payments either by the debtor or the escrow agent.

The first sentence, pertaining to agreement between a debtor and the trustee, is not remarkable. It implies the assumption that the types of claims named in the Local Rule would otherwise be paid by the trustee, yet provides a practical alternative to having the trustee serve the role of an escrow agent. It reflects the long-standing principle that parties are free to contract for treatment that they are not entitled to demand. It also facilitates the relatively common practice of selling or refinancing real property in Chapter 13 through escrow by providing parameters for such agreements.

The second sentence, regarding payment of the trustee's fee, should be considered a qualification on the first. It outlines the requirement[5] that the debtor pay the trustee's percentage fee if the parties agree to direct payment through escrow *and* if the trustee so demands. If the debtor is unwilling to agree to this latter requirement, there cannot be an "agreement" between the two parties under LBR 3015-1(b)(7). The alternative, of course, is for the debtor to turn over to the trustee (or direct the buyer to pay to the trustee) funds sufficient to pay the relevant claims in full. If the funds are paid to the trustee for distribution, 28 U.S.C. § 586(e)(2)[6] permits the trustee to collect a fee on the received amounts. But if, under LBR 3015-1(b)(7), the parties agree to direct payment through escrow as well as the trustee taking a fee on those payments, the trustee's right to the fee is not a function of 28 U.S.C. § 586, but rather an agreement by the

---

[5] Unless otherwise specified, the term "may," when used in the LBRs, means "has discretion to, is permitted to, or has a right to." LBR 9001-1(y). In the context of the "trustee may, upon demand" portion of LBR 3015-1(b)(7), the term gives the trustee the right to demand payment of the statutory fee for claims paid through escrow.

[6] The statute provides: "[s]uch individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee."

MEMORANDUM OPINION-7

debtor. Alternatively, it could be said that the parties have agreed, and the plan orders, that the payments made through escrow were constructively received by the trustee. In this manner, there is no inconsistency between 28 U.S.C. § 586 and LBR 3015-1(b)(7).

In this case, Debtors wish to pay all secured claims through escrow at closing, but are unwilling to meet Trustee's demand that they pay his fee on the impaired claims. As such, there is no agreement under LBR 3015-1(b)(7). Where Debtors propose to pay the impaired secured claims directly, the Plan does not satisfy § 1326(c) and cannot be confirmed. I therefore sustain Trustee's Objection to Confirmation. Debtors have 21 days to do one of two things: (1) file a 2nd Modified Plan consistent with this ruling, or (2) submit to Trustee a proposed Order Confirming Plan that amends paragraph 10 of the Plan to reflect payment of Trustee's fee. Failure to take either action will result in dismissal of the case. If, by the 21-day deadline, Wells Fargo's pending objection to confirmation is resolved and withdrawn, the proposed Order (or 2nd Modified Plan) should reflect that resolution. If not, Debtors should, within that same 21-day period, notify the Court in writing and request an evidentiary hearing.

The above sets forth my findings and conclusions under Fed. R. Bankr. P. 7052. The Court will prepare its own order.

THOMAS M. RENN
Bankruptcy Judge